966 F.2d 1451
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David A. DUGGAR, et al., Plaintiffs-Appellants,
v.
BOISE CASCADE CORPORATION, Defendant-Appellee.
 No. 91-6112.
 United States Court of Appeals, Sixth Circuit.
 June 16, 1992.
 
 Before KENNEDY, SILER and KRUPANSKY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs, former employees of defendant, Boise Cascade Corporation (Boise), appealed the district court's grant of summary judgment in favor of the defendant. The district court concluded that defendant's denial of severance benefits did not violate the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA), did not create an actionable breach of contract claim under either state or federal common law, and did not violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (1984 & Supp.1986) (RICO). Plaintiffs appealed the district court's disposition of the ERISA and contract claims.
 
 
 2
 Boise is a corporation which manufactures and sells various products nationally. Pursuant to an agreement dated March 9, 1987, Boise sold to Sonoco Products Company (Sonoco) one of its components, the Consumer Packaging Division (CPD), that has facilities in Memphis, Tennessee. After the sale of the CPD to Sonoco, plaintiffs who were employed at CPD continued their employment with Sonoco.
 
 
 3
 On December 14, 1989, plaintiffs filed their Amended Complaint which alleged that they were entitled to severance pay benefits from Boise pursuant to a welfare benefit plan even though their employment continued without interruption with Sonoco after Boise sold its division as a continuing operation.[1] On September 10, 1990, Boise filed a motion for summary judgment. Plaintiffs filed a cross-motion for summary judgment on September 21, 1990. On August 22, 1991, the district court granted summary judgment in favor of Boise.
 
 
 4
 The defendant argued that the plaintiffs were not entitled to severance pay benefits because Section II of the Corporate Policy Manual (Manual) entitled "Scope"[2] included a provision since 1974 which expressly excluded employees whose operating unit was acquired by another company where employment was continued without interruption from the right to collect severance pay benefits. Further, the defendant alleged that the policies set forth in the Manual were summarized in the Salaried Employee Handbook (Handbook) which was distributed to all salaried employees. The Handbook contained a provision which instructed employees to contact their supervisors or employee relations manager or refer to the Corporate Policy Manual for more detailed information about employment policies.
 
 
 5
 In early 1985, Catherine E. Zander (Zander), administrator of benefit plan compliance for Boise, determined that the Handbook should be expanded to specifically include the language from the termination of employment policy in the Manual excluding payment of severance pay to those employees whose business unit was acquired by a third party as an ongoing business operation. Zander testified that she had no knowledge of any plans to sell the CPD, and the amendment was not made in contemplation of the sale of any division of Boise, including the CPD.
 
 
 6
 According to the defendant, the amendment to the Handbook became effective January 1, 1986, and included language that provisions for severance pay would not apply "to employees whose operating unit is acquired by another company." The plaintiffs asserted that employees did not receive a copy of the revised Handbook until November-December of 1986 or February of 1987.
 
 
 7
 Plaintiffs have charged that they are entitled to severance pay benefits because the Handbook did not expressly inform employees that they would not receive severance pay if their unit was sold to a third party and they remained employed by the purchaser. They urged that they had relied on the following provision in the Handbook and believed that they would be eligible for severance pay benefits:
 
 
 8
 If you are separated from the company involuntarily, you will receive either two weeks written notice or two weeks pay in lieu of such notice. Depending on your length of service, you may be eligible to receive severance pay during a transition period. The amount of severance pay is determined by your supervisor in keeping with company guidelines.
 
 
 9
 They further urged that they had interpreted Section V of the Manual,[3] which stated that the employer would provide severance pay when an employee was terminated involuntarily except when terminated for disciplinary reasons, to mean that they nevertheless would receive termination benefits even if they continued to be employed by the purchaser of the CPD.
 
 
 10
 After reviewing the Manual and Handbook provisions de novo, the trial court granted summary judgment in favor of Boise. The court first noted that it was not necessary to determine whether the Handbook rather than the Manual contained the terms of the severance policy because the parties conceded that Boise committed its severance policy to writing as early as 1974. The court concluded that since 1974 the severance pay policy contained in the Manual clearly excluded employees whose operating unit was acquired by another company. It determined that Section V of the Manual merely discussed severance pay with regard to employees not previously excluded from the scope of the severance policy by the limitations outlined in Section II of the Manual. It further concluded that the provision in the Handbook which urged employees to contact supervisors or read the Manual for further details of the employment policy placed the employees on notice that receipt of severance pay was an option governed by company guidelines. Moreover, the court determined that ERISA preempted any state or federal common law contract claims raised by plaintiffs.
 
 
 11
 In their first assignment of error, the plaintiffs charged that the district court erred when it decided that it was not necessary to determine whether or not the original Handbook contained the ERISA plan. This assignment of error is without merit because even if the Handbook rather than the Manual incorporated the terms of the ERISA severance plan, Boise was free to amend the policy before it sold the CPD to Sonoco. Adams v. Avondale Industries, Inc., 905 F.2d 943, 950 (6th Cir.), cert. denied, 111 S.Ct. 517 (1990). The record disclosed that the sale of the CPD became final on March 9, 1987 and that the amendment became effective at the latest in February of 1987 when distributed to the employees.
 
 
 12
 Furthermore, assuming that the plaintiffs had relied upon the Handbook as the information source for outlining the severance plan and the defendant had failed to disseminate the Manual to all salaried employees, the court was not precluded from referring to the Manual to ascertain the intent of the plan. Adcock v. Firestone Tire & Rubber Co., 822 F.2d 623 (6th Cir.1987). In the instant action, the court properly concluded that the provisions in the Manual indicated that since 1974 Boise intended that employees whose employment was terminated because of the sale of an operating unit were not entitled to any of the benefits of the policy where employment of those assigned to that unit continued without interruption by the purchaser. Furthermore, the Handbook contained a provision which placed the employees on notice that the severance plan was a contingency and that they were to refer to the Manual or a supervisor for further information.
 
 
 13
 Plaintiffs' second assignment of error is equally without merit. They charged that the court erred when its de novo interpretation of the severance plan in the Manual was not construed against the drafter-Boise because the language of the plan was ambiguous. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 116 (1989); Adams, 905 F.2d at 950. A review of the severance pay policy contained in the Corporate Manual, when read sequentially and within the intended context, clearly excludes the plaintiffs from receiving severance benefits. No ambiguity exists, and therefore, this court need not interpret the plan against the drafter of the document as asserted by plaintiffs.
 
 
 14
 In their third assignment of error, plaintiffs stated that the court erred when it concluded that ERISA preempted their federal common law contract claim. Plaintiffs failed to cite to any case authority to support their proposition. This Circuit recently reiterated the general rule that common law contract claims are preempted by ERISA. Cattin v. General Motors Corp., 955 F.2d 416 (6th Cir.1992). However, the court noted that if a retirement plan creates rights in excess of those established by ERISA, those rights may be enforceable in contract under federal common law. Id. See also Adams, 905 F.2d at 949 (court recognized that parties may set out by agreement or private design whether retiree welfare benefits vests or whether they may be terminated). Unless an additional agreement exists between the parties which expresses terms outside those required by ERISA, courts have routinely rejected federal common law contract claims in ERISA actions because such claims would nullify Congress's determination in structuring ERISA that severance plans should be exempt from vesting requirements. Reichelt v. Emhart Corp., 921 F.2d 425 (2d Cir.1990), cert. denied, 111 S.Ct. 2854 (1991). See also Hozier v. Midwest Fasteners, 908 F.2d 1155, 1162-63 n. 8 (3d Cir.1990) (claim to recover benefits under terms of plan arises under ERISA rather than as a federal common law claim). Accordingly, the plaintiffs have failed to assert a valid federal common law action.
 
 
 15
 After a review of the record and briefs of counsel, the district court's disposition is hereby AFFIRMED.
 
 
 
 [1]
 The Boise severance policy was an unfunded plan applicable to only salaried employees and severance benefits were paid from general operating funds of Boise. No severance benefits have ever been paid by Boise to salaried employees whose operating unit was acquired by another company where the employment was continued without interruption
 
 
 [2]
 The 1974 version of Section II of the Corporate Policy Manual provided as follows:
 This policy applies to all permanent, full-time, salaried employees of Boise Cascade Corporation who are located in any of the fifty United States, including wholly-owned or majority-owned subsidiaries and joint ventures for which the Company has management responsibility. Outside the United States local laws must be adhered to where applicable.
 This policy does not apply to termination of employment with Boise Cascade arising because of the sale of an operating unit on a going business basis where the employment of those assigned to that unit is continued without interruption by the purchaser of the unit.
 This section was amended in 1986 and contained the following relevant language:
 Boise Cascade employees whose employment is terminated because of the sale of an operating unit are not entitled to any of the benefits of this policy where the employment of those assigned to the unit is continued without interruption by the purchaser of the unit.
 
 
 [3]
 Section V of the Corporate Policy Manual stated in pertinent part:
 Permanent, full-time and part-time salaried employees working an average of 20 hours or more per week who are terminated involuntarily, except when terminated for disciplinary reasons, shall receive a written notice of two weeks or pay in lieu of that notice. In addition, these employees will receive severance pay according to the qualifications and schedule outlined in Section VII. Part-time employees working an average of less than 20 hours per week and temporary employees are not eligible to receive pay in lieu of notice or severance pay.
 If an employee is being considered for termination due to unsatisfactory performance, the procedures outlined in the Performance Planning and Review Handbook should be followed to help ensure that the employee is aware of the problem and has been given appropriate notice.